

**Division of Research**

| SUBJECT: | Effective Date: | Policy Number: | |
|---|---|---|---|
| Intellectual Property Policies | 7/1/2013 | 10.6 | |
| | Supersedes: | Page | Of |
| | | 1 | 27 |
| | Responsible Authority: | | |
| | Vice President for Research | | |

**DATE(S) OF INITIAL ADOPTION AND EFFECTIVE DATE:**

Policy initiated by FAU Office of Technology Transfer on March 1st, 2004.  Policy Revised on January 23rd, 2004.  Appendices II, III, IV, V, VI, VII & VIII revised January 2011.  Name change to Office of Technology Development on July 1st, 2013.

**APPLICABILITY/ACCOUNTABILITY:**

Establishes policy and procedures for disclosure and assignment of ownership of potentially patentable inventions created in the course of work at Florida Atlantic University or with more than incidental use of Florida Atlantic University resources. Extends this requirement to faculty, staff, graduate students and visitors involved in research.

**INITIATING AUTHORITY:**

Vice President for Research

1

# Contents

10.6.1  General Comments ................................................................................... 3
10.6.2  Legal Considerations ............................................................................... 3
10.6.3  University Inventions and Works
        10.6.3.2  Definitions ................................................................................ 4
        10.6.3.2  Inventions and Works: Overview of Rights and Obligations
                Ownership Rights ................................................................... 6
                Disclosure Obligations .......................................................... 7
                Requirement to Safeguard ..................................................... 7
                Outside Sponsorship ............................................................. 7
                Consulting Activities .............................................................. 8
        10.6.3.3 Inventions: Relationships between the Creator and
              the University Regarding Inventions ....................................... 8
        10.6.3.4 Works: Relationships between the Creator and
              the University Regarding University-Supported Works ............ 9
        10.6.3.5 Distribution of Net Income from Works and Inventions ........... 11
              Equity in Lieu of Cash Payments .......................................... 12
        10.6.3.6  Relationships between Employees and
              the University Regarding Business Transactions .................. 13
10.6.4  Procedures Regarding Inventions and Works
10.6.4.1  Organization and Authority ..................................................... 13
10.6.4.2  Making Disclosures ............................................................... 14
10.6.4.3  Disclosure Review .................................................................. 14
10.6.4.4  Determination of Ownership ................................................... 15
10.6.4.5  Commercialization .................................................................. 15
10.6.5     Effective Date ........................................................................ 15

**APPENDICES:**
Appendix I
        Section 1004.23, Florida Statutes
        Universities; Powers; Patents, Copyrights, and Trademarks .................................. 17
        Section 112.313 (1-8), Florida Statutes
        Standards of Conduct for Public Officers, Employees of Agencies,
        and Local Government Attorneys ........................................................................ 17
Appendix II
        Sections of US Copyright Law .............................................................................. 18
Appendix III
        Article 18
        BOR/UFF Collective Bargaining Agreement Inventions and Works. ....................... 23
        Article 19
        BOR/UFF Collective Bargaining Agreement - Conflict of Interest/Outside Activity ... 25

**FORMS:**
Appendix IV  Disclosure of Financial Conflict of Interest Status Form
Appendix V   Report of Outside Employment or Professional Activity Form
Appendix VI  Report of Specified Interest Form
Appendix VII  Invention Disclosure Form

Appendix VIII  Work Disclosure Form

# 10.6.1 General Comments

The central mission of Florida Atlantic University (the University) is to promote effective teaching and research that foster innovation, stimulate a spirit of inquiry and problem solving, and lead to the discovery of new knowledge.  While the vast majority of activity conducted at the University is not directed toward the production of commercial products and inventions, the University recognizes that marketable forms of intellectual property may result from research conducted by personnel of the University.  The University has a responsibility to support personnel in fostering all forms of intellectual property, but has a special obligation to serve the public interest by insuring that marketable forms of intellectual property are appropriately developed into commercial products available to the public.

This policy distinguishes between two classes of intellectual property produced on campus, Works and Inventions, which are defined in Section 10.6.3.2. Generally, Works include copyright able material and Inventions include patentable material.  This policy articulates the specific rights that accrue to the authors/inventors and the University according to these two primary categories.

In accordance with the U.S. Constitution, the objective of copyright is to promote the progress of science and useful arts.  Like the policies of most institutions of higher learning, the University interprets copyright law (excerpted in Appendix II) as a means of encouraging the discovery of new knowledge and its dissemination to students, to the profession, and to the public.  Furthermore, this policy promotes the long-standing academic tradition, as described by the Statement on Copyright, issued by the American Association of University Professors (AAUP), that treats the faculty member as the copyright owner of works that are created independently and at the faculty member's own initiative for traditional academic purposes, regardless of the physical medium, whether on paper or in audiovisual or electronic form.

Under the Bayh-Dole Act of 1980 and subsequent amendments, universities are granted the ownership of intellectual property created under government-funded work and charged with commercializing those inventions for the public good.  This Intellectual Property Policy is meant to encourage and enable technology development and for the benefit of the public. Adequate recognition of and incentive to potential creators of intellectual property through the sharing of the financial benefits resulting from the transfer and development of patentable inventions and other marketable forms of intellectual property encourages the creation of such intellectual property.  At the same time, the University's share in the financial benefits provides funds for further research at the University. Consistent with the Bayh-Dole Act, the University is committed to sharing the intellectual and financial benefits resulting from the work of its personnel.

This policy acknowledges that issues of intellectual property are complex and that individual circumstances may affect the establishment of ownership of University works and inventions.  It provides a framework for assigning ownership rights and creating both incentives and protections that will encourage the discovery and development of new knowledge and its application and transfer for the public benefit.  In addition, it provides for the equitable distribution of net income from the transfer and development of works and inventions.

## 10.6.2 Legal Considerations

With the passage of the Bayh-Dole Act (Public Law 96-517 entitled The Patent and Trademark Amendments Act of l980) and subsequent amendments, the federal government facilitated the retention of  intellectual property, particularly inventions, by universities. In this act the federal government gives nonprofit organizations, including universities, the right to retain title to inventions they have made in the performance of government grants and contracts.  The act reflects Congress' intention that these organizations use the patent system as a vehicle to effectuate the transfer of government-funded inventions to the public.

This Intellectual Property Policy of Florida Atlantic University is based on Section 1004.23, Florida  Statutes (Appendix I), which authorizes the University to license, protect, and otherwise deal with the work products of University personnel.  The University has implemented this authority through this Intellectual Property Policy, which requires that all Florida Atlantic University personnel disclose certain works and all inventions which that person may develop or discover while affiliated with the University. Such a disclosure requirement is also found in Article 18 of the Collective Bargaining Agreement between the FAU Board of Trustees and the United Faculty of Florida (Appendix III), which governs faculty members in the collective bargaining unit.  The Collective Bargaining Agreement sets forth the standards under which the University's ownership of such works and inventions are determined.  These are explained in Section C. of this policy.  This Policy will be kept consistent with the Collective Bargaining Agreement.

This Intellectual Property Policy is a University-level document and applies to all University Personnel, as that term is defined in this policy.  Additional policies or provisions of State law may also affect the handling of intellectual property.

## 10.6.3 University Inventions and Works

### 10.6.3.1 Definitions

For the purposes of this Intellectual Property Policy, the following definitions shall apply:

    a.   University shall mean Florida Atlantic University.

    b. University Personnel shall include full-time and part-time employees of the University, including faculty, administrative and professional, University Support Personnel System, and Other Personnel Services employees; and other persons paid by or through the University, including fellows.  In addition, non-paid individuals who use University Support in University teaching, research, and/or scholarly projects, including research faculty, emeritus faculty, graduate students, undergraduate students, and volunteers are University Personnel and are bound by this policy with respect to Works and Inventions that result from the use of University Support.

    c. Work(s) shall include any copyrightable material, such as printed material, computer software or databases, audio and visual material, circuit diagrams, architectural and engineering drawings, lectures, musical or dramatic compositions, choreographic works, and pictorial or graphic works.  A Work also includes copyrightable material that is used to assist or enhance instruction.

d. Invention(s) shall include any discovery, invention, process, composition of matter, method of doing business, article of manufacture, know-how, design, model, technological development, biological material, strain, variety, culture of any organism, or portion, modification, translation, or extension of these items, and any mark used in connection with these items.  An Invention also includes material, other than Works, that is used to assist or enhance instruction.

e. Intellectual Property means all intellectual property including all Works and Inventions.

f. Creator(s) shall mean a member of University Personnel who creates a Work or creates or discovers an Invention.

g. University Support shall include the use of University funds, personnel, facilities, equipment, materials, or technological information, and includes such support provided by other public or private organizations when it is arranged, administered, or controlled by the University.

h. Independent Efforts with regard to a Work means that the ideas for the Work came from the Creator(s), the Work was not made with the use of University Support, and the University is not held responsible for any opinions expressed in the Work.

i. University-Supported Work(s) shall mean a Work of a Creator(s) made using University Support, or for which the University is held responsible for any opinion expressed in the Work, or for which the ideas for the Work did not come from the Creator(s).

j. Traditional Work(s) Of Scholarship shall mean University-Supported Works such as theses, dissertations, books, articles, plays, poems, musical compositions, and similar works of scholarship or artistic imagination, to the extent these Works disseminate the results of academic research or scholarly study.  Underlying University Supported Works contained within Traditional Works of Scholarship may not themselves be Traditional Works Of Scholarship.

k. Regular Instructional Work(s) shall mean University-Supported Works developed without the use of appreciable University Support and used solely for the purpose of assisting or enhancing the faculty member's instructional assignment.  In determining whether University Support is appreciable, factors such as the following shall be considered:  (i) whether the creation of the Work involved the use of special services, equipment, facilities, or technological information that go beyond what is traditionally provided to faculty members generally in the preparation of course materials; and (ii) whether the Work in question was created as a specific requirement of employment or as an assigned instructional duty.

l. OTD shall mean the Office of Technology Development of the Florida Atlantic University. The Vice President for Research has been designated by the President of the University to carry out the responsibilities authorized by Section 1004.22, Florida Statutes, and the implementation of  Section 1004.23, Florida Statutes, concerning the work products of University personnel. Through the selective delegation of authority from the Vice President for Research, only OTD shall be authorized to commit available University funds for the expenses of licensing and patenting or copyrighting Works and Inventions

on behalf of the University. OTD shall also be responsible for all matters relating to patents, trademarks, and copyrights as related to the identification, protection, and commercialization of University-owned Works and Inventions.  OTD represents the University in the implementation of this Intellectual Property Policy with regard to governmental entities, industry, and the public.

m. FAURC shall mean the Florida Atlantic University Research Corporation, a direct support, not-for profit organization incorporated in the State of Florida to promote, encourage, and provide assistance to the research activities of University faculty, staff, and students.  Technology development is facilitated through FAURC because it may take equity interests in licensee entities, which the University is precluded from accepting. At the sole discretion of the University, Works and Inventions in which the University asserts its interests may be assigned to FAURC. If a Work or Invention is assigned to FAURC, FAURC follows the same policy as the University in the distribution of proceeds.

n. Development Expense(s) shall mean all moneys paid by the University and/or FAURC for goods and services to protect, develop, and/or enhance the marketability or any other aspect of a Work or Invention, including, but not limited to, patent preparation and prosecution expenses, patent filing fees, marketing expenses, patent maintenance fees, consulting fees, expenses incurred in dealing with equity interests, travel, attorneys' fees, litigation costs, and research costs. Not included, as Development Expenses are salaries and general operating expenses of University administrative personnel.

o. Gross Revenue(s) shall mean: (1) proceeds from the sale, lease, transfer, or other conveyance of an Invention or Work by the University and/or FAURC, and (2) license issue fees, option fees, royalties, and equity interests paid to the University and/or FAURC by a licensee of an Invention or Work, except that such equity interests, or portion thereof, shall not be considered Gross Revenue unless and until FAURC sells, exchanges, or chooses to distribute the equity interests, or portion thereof.

p. Net Income shall mean Gross Revenues less all Development Expenses for a Work or Invention and its improvements.

q.  Standing Advisory Committee shall be a committee comprised of at least 3 faculty members who are appointed by the Vice President for Research and Graduate Studies and a representative of the Office of General Counsel and other members appointed by the Vice President for Research and shall be chaired by the Vice President for Research or his/her designee  The Vice President for Research may consult the Standing Advisory Committee, if needed, to determine ownership of University Inventions and Works and other related intellectual property matters.

# 10.6.3.1 Inventions and Works: Overview of Rights and Obligations

**Ownership Rights**

An Invention that is made in the field or discipline in which the Creator is engaged by the University or made with the use of University Support is the property of the University.  The Creator generally will share in the proceeds there from subject to preexisting commitments to outside sponsoring agencies.  For the faculty who are members of the Collective Bargaining

Agreement, the Collective Bargaining Agreement shall apply.  An Invention made outside the field or discipline in which the University engages the Creator and for which no University Support has been used is the property of the Creator. In the latter case, however, the Creator and OTD may agree that the Invention be assigned to the University and the proceeds, if any, shared pursuant to this Intellectual Property Policy.  (See also Section 10.6.3.3 and 10.6.3.4.)

A Work that is made in the course of Independent Efforts is the property of the Creator.  A University Supported Work is the property of the University.  The University will not assert rights to Traditional Works Of Scholarship or Regular Instructional Works.  The Creator shall share in the proceeds from a University-Supported Work, for which the University asserts rights, subject to preexisting commitments to outside sponsoring agencies.  (See also Section 10.6.3.4.)

**Disclosure Obligations**

University Personnel are required to disclose promptly, pursuant to the disclosure procedures set forth in Section 10.6.4.2, all Inventions and University-Supported Works, including all Regular Instructional Works but excluding Traditional Works Of Scholarship. *All Inventions must be disclosed, even those believed by the Creator to be unrelated to his or her University duties and not involving the use of University Support.*

**Requirement to Safeguard**

University Personnel have the obligation to refrain from any act that would defeat the University's rights in any Works and Inventions they make as well as the Works and Inventions of other University Personnel.   In order to maintain the University's rights to obtain patent or other intellectual property protection of an Invention or Work, University Personnel must maintain the confidentiality of each Invention and University-Supported Work consistent with the University's decisions regarding the protection desired, commercialization, and/or other uses of the Invention or Work.  This is particularly important for Works and Inventions that have been sponsored by an outside entity through a grant or contract. If the publication of research results may reveal an Invention, University Personnel shall inform OTD of such publication in a timely manner to give OTD an opportunity to file a patent or copyright and protect the intellectual property rights of the University.

In accordance with recognized scientific research procedures, University Personnel are required to record all research data and information accurately and clearly and to keep all such data in a permanent and retrievable form. In addition, with regard to a patentable Invention, original laboratory data must be kept for the life of the patent. University Personnel must also securely store tangible property (such as biological materials, chemical compounds, and computer discs) related to an Invention or Work to which the University has asserted or may assert its ownership rights.  When specifically authorized by the University, personnel who leave the University may be permitted to copy their laboratory notebooks and take the copies with them, although they may be required to maintain the confidentiality of the data contained within the notebooks when appropriate.  The original notebooks will remain at the University.

**Outside Sponsorship**

The University enters into research contracts that promote the public interest and usually lead to publishable research or provide for educational opportunities.  Such agreements must permit the disclosure and publication of University research results, although limited delays in publication for patent filing may be acceptable. It is the University's policy, except in unusual

cases, to require that Works and Inventions developed in the course of University research sponsored by private persons, business and not-for-profit entities, and state and local governmental agencies be the property of the University.  An option to acquire a license may be accorded to the sponsor with regard to such Inventions or Works, but this option will be only for a limited period following disclosure.  University Personnel working on any project funded under a research contract with an outside sponsor must be aware of, and follow the disclosure and publication provisions in the research contract.  In addition, University Personnel working on any such project are required to submit, and update periodically, a Disclosure of Financial Conflict of Interest (Appendix IV).

**Consulting Activities**

Faculty and other University Personnel engaged in consulting work should use great care to ensure that their consulting agreement(s) are not in conflict with the University's policies on outside activities and financial interests.  Consulting agreements sometimes require that the consultant waive intellectual property rights as a condition of service.  Such agreements may conflict with this policy concerning University ownership of Inventions and Works.  Approval of such requests will be based on a determination that the University would not possess any interest in such rights or that the agreement is appropriately modified concerning such rights. Where consulting activities involve a reduction to practice of Inventions or Works or potential Inventions or Works conceived under federal sponsorship or with University Support, permission to waive rights to the company or the Creator will not be granted.  A determination by the University must be initiated by submitting a Report of outside Business or Professional Activity (Appendix V). University Personnel engaged in approved consulting work are required to disclose any Work or Invention made in the course of the consulting work in accordance with the instructions of subsection 10.6.4.2 of this policy.

**10.6.3.3 Inventions: Relationships Between the Creator and the University Regarding Inventions**

Two separate relationships between the Creator and the University with regard to Inventions are recognized:

> *a. Inventions Made Outside the Creator's Field and Without University Support*
> If an Invention is made or developed in a field or discipline other than the field or discipline in which the Creator was engaged by the University to teach, do research, or perform other duties, and without any University Support, the rights to the Invention shall belong to the Creator. Under these conditions, the Creator is, nevertheless, required to make full disclosure of the Invention in accordance with subsection 10.6.4.2 of this policy so that the University may make a determination of rights.

> *b. Inventions in the Field in Which the Creator is Engaged or Made with University Support*
> If, after a full disclosure of an Invention and review in accordance with Section D of this policy, the Invention is determined to have been made or developed in the field or discipline in which the Creator was engaged by the University to teach, do research, or perform other duties, or the Invention is determined to have been made with University Support, OTD may, on behalf of the University:

(i) elect to acquire title to the Invention by assignment (i.e., the Creator assigns the rights to the University). The development and marketing of the Invention are at the discretion of the University and FAURC. Generally, the University or FAURC seeks to develop and market the Invention and may elect to seek patent or other legal protection. Once application for a patent has been made, OTD will be responsible for the development and negotiation of licensing agreements in order that the Invention is managed in a way that serves the public interest. In rare cases, the University may elect to license the Invention to the Creator for a minimal royalty, and the Creator may elect to obtain patent protection; or

(ii) decide the Invention disclosure is premature or incomplete, in which case, the Creator will be asked to resubmit the Invention disclosure when additional information is obtained; or

(iii) elect to waive the University's rights to the Invention, thus allowing the Creator to protect the Invention as he or she may wish. If outside funds supported the work leading to the Invention, this waiver is subject to any provisions in the sponsoring agreement. In cases in which the University has waived its interest and the Invention was supported by federal funding, any waiver must be to the supporting federal agency, rather than to the Creator(s). In addition, the waiver shall not affect the right of the University and the State of Florida to royalty-free use of the Invention, nor shall such a waiver be granted until any preexisting commitments to sponsoring agencies with regard to Inventions are cleared. In general, the University will not waive its rights to Inventions of Creators who are full-time employees or appointees of the University.

## 10.6.3.4 Works: Relationships Between the Creator and the University Regarding University-Supported Works

Three separate relationships between the Creator and the University with regard to University-Supported Works are recognized:

   *a. Traditional Works Of Scholarship:*
The University recognizes and affirms the traditional freedom of its faculty and staff to publish Traditional Works Of Scholarship without restriction.  A Work that a Creator believes is a Traditional Work Of Scholarship, as defined in Section 10.6.3.2 need not be disclosed to the University.  The University will not assert rights to Traditional Works Of Scholarship.  However, the University may assert rights to University-Supported Works contained within a Traditional Work Of Scholarship.

*b. Regular Instructional Works:*
The University recognizes and affirms that Regular Instructional Works are the property of their Creators.  However, a Work that a Creator believes is a Regular Instructional Work, as defined in Section 10.6.3.2 must be disclosed to the University.  The head of the Creator's Center or Department/Division should determine procedures for such disclosure.  Following an assessment that the Work is a Regular Instructional Work, the University will not assert rights to such Work.

*c. All other University-Supported Works:*
If, after a full disclosure of a Work and review in accordance with Section 10.6.4 of this policy, a Work is determined to be a University-Supported Work that is neither a

Traditional Work Of Scholarship nor a Regular Instructional Work, OTD may, on behalf of the University:

(i) elect to acquire title to the Work by assignment (i.e., the Creator assigns the rights to the University).  The development and marketing of the Work is at the discretion of the University and FAURC. Generally, the University or FAURC seeks to develop and market the Work and may elect to seek copyright or other legal protection.  OTD will be responsible for the development and negotiation of licensing agreements in order that the Work is managed in a way that serves the public interest.  In rare cases, the University may elect to license the Work to the Creator for a minimal royalty; or

(ii) decide the Work disclosure is premature or incomplete, in which case, the Creator will be asked to resubmit the Work disclosure when additional information is obtained; or

(iii) elect to waive the University's rights to the Work, thus allowing the Creator to protect the Work as he or she may wish. If outside funds supported the work leading to the Work, this waiver is subject to any provisions in the sponsoring agreement. In cases in which the University has waived its interest and the Work was supported by federal funding, any waiver must be to the supporting federal agency, rather than to the Creator(s). In addition, no waiver shall be granted until any pre-existing commitments to sponsoring agencies with regard to Works are cleared. In general, the University will not waive its rights to Works of Creators who are full-time employees or appointees of the University. If a Creator assumes ownership of any University-Supported Work, the University and the State of Florida will retain for informational or educational purposes a limited, royalty-free right to the use of the Work and to all copyright rights in the Work, excluding the copyright right to make modifications. If the University asserts rights to any University-Supported Work, upon request, the Creator will be granted, only for the Creator's own informational or educational purposes, a limited, royalty-free right to the use of the Work and to all copyright rights in the Work, excluding the copyright right to make modifications. Furthermore, while the Creator is a University Personnel, the University will consult with, and first offer to the Creator the right to make modifications in the Work should the modified Work be intended for use within the University.  Should the University allow anyone other than the Creator to make modifications in the Work then, upon request of the Creator, the University will make all reasonable efforts to remove from the Work any attribution to the Creator.  Separate written agreements may be made between OTD and the Creator regarding any Work. For example, to protect the integrity of the Work, certain artistic rights, especially the right to make modifications, might be retained by the Creator.  Conversely, to assure effective commercialization of a Work, certain rights that the Creator reserves may be relinquished prior to licensing the Work to a commercial developer.  Prior to the creation of a Work, especially when appreciable University Support may be used in its creation, the Creator may seek an agreement with OTD to establish or clarify certain ownership rights.

**10.6.3.5 Distribution of Net Income from Works and Inventions**

With regard to any Work or Invention owned by the University, Net Income, less any foreseeable Development Expenses OTD or FAURC deems necessary to defend or maintain the Work or Invention, will be distributed as follows:

|  | To Cap A | From Cap A to Cap B | Above Cap B |
|---|---|---|---|
| Creator | 100% | 50% | 35.0% |
| Creator's research use | 0% | 5% | 6.5% |
| Creator's Center | 0% | 5% | 6.5% |
| Creator's Department/Division | 0% | 5% | 6.5% |
| Creator's College | 0% | 5% | 6.5% |
| FAURC | 0% | 30% | 39.0% |

Cap A is reached when a total of $5000 of Net Income has been distributed from a license, regardless of the number of Inventions or Works or Creators associated with such license.  Cap B is reached when $100,000 has been distributed from a license, regardless of the number of Inventions or Works or Creators associated with such license.

Distributions of Net Income will be made semiannually on or before June 1 and December 1 of each year.  This distribution schedule allows OTD or FAURC to assure that all applicable licensing and related expenses have been accounted for. OTD or FAURC may, at its sole judgment, withhold or delay distribution of any Net Income if there is a foreseeable Development Expense yet to be incurred. In instances where funds are held because of foreseeable Development Expenses or where expenses exceed revenue, an accounting of such will be sent to the Creator and the Creator's Center, Department/Division and College indicating the amounts received for the current six-month period and the amount of the anticipated expense or deficit. Once expenses are known with certainty, any excess withholding will be distributed.

Payments of the portion of Net Income allocated to the Creator(s) must be made to Creator(s) individually. An IRS Form 1099 or other appropriate form will be issued to the Creator(s) for their share of Net Income.  The University cannot advise individuals on the tax consequences of these payments.  After a Creator's death, payment will be made to the Creator's estate or heirs.

In the event there are multiple Creators for an Invention or Work, the Creators' share will be divided among the Creators as the Creators decide by mutual agreement.  OTD must be notified in writing at least one month prior to the date of the first income distribution as to the agreed-upon division of Net Income.  If the Creators cannot mutually agree on a distribution, then the OTD Director will decide on a distribution among the Creators.  The decision of the OTD Director may be appealed to the Vice President for Research and Graduate Studies whose decision in this regard shall be final.

The portion distributed to the Creator's research use (as defined above) will be placed in a fund in the Creator's Center or Department/Division for the Creator's discretionary research use.  If a Creator should leave the University, the portion allocated to the Creator's research use will be allocated to the Creator's Center or Department/Division.  If there is more than one Creator, the

portion allocated to the Creators' research use will be pro-rated among the Creators as OTD determines.

The portions distributed to the Center, Department/Division and College, which are the Center, Department/Division and College of the Creator(s) at the time of the creation of the Invention or Work, will be prorated when more than one Center or more than one Department/Division or more than one College is involved. OTD will make the final decisions on the pro-ration of such portions to Centers, Departments/Divisions and Colleges. In the case of licenses or other transactions involving multiple Inventions or Works, OTD shall resolve any potential conflicts concerning the applicable distribution schedules after reviewing the technologies involved.  If any Creator is not affiliated with a University recognized Center, that portion normally allocated to that Creator's Center will instead be allocated to that Creator's Department/Division.  Funds distributed to the Centers, Departments/Divisions and Colleges must be used solely for the support of research at the University.

OTD and FAURC will utilize their share of the Net Income distribution to support patent and research activities at the University.

<u>Equity in Lieu of Cash Payments</u>
FAURC may elect to accept equity in lieu of cash payments for a license fee or royalty.  The decision to accept equity in lieu of cash is made at the sole discretion of FAURC and does not constitute an obligation on behalf of FAURC to make a disbursement of equity to the Creator(s) or to the Center(s), Department(s)/Division(s) and College(s) until the equity is sold.

Until distributed, FAURC will own and exercise all rights of ownership, including the rights to vote equity interests on all matters which are subject to the consent or approval of the holders of similar equity interests (including voting such equity interests for the election of the directors, approving or disapproving amendments to articles of incorporation, etc.). FAURC will retain and own the equity interest until the distribution, sale or exchange of the interest. The decision as to when to distribute, sell or exchange equity resides with the FAURC Board of Directors in its sole discretion.

The value received by FAURC from the sale or exchange or other disposition of any equity interests will be treated as Gross Revenues.  Equity that FAURC chooses to distribute will be treated as Gross Revenue. When distributing, selling, exchanging or otherwise disposing of any equity interests, FAURC may agree to pay such commissions or other fees or charges and may incur such expenses, as it shall determine at its sole discretion. All such expenses are considered Development Expenses in determining Net Income to be distributed.  Net Income from equity will be distributed as described above; however, any Net Income that is distributed in the form of shares of equity, as against cash from the sale of equity, will be distributed as if it were Net Income in excess of Cap B.

A Creator may receive equity from a licensee outside of the equity that the University receives from the licensee in consideration for a license to a Work or an Invention.  If a Creator receives equity from a licensee outside of the equity received by the University, such Creator will not share in the distribution of the Net Income associated with the equity received by the University except with the approval of the Vice President for Research and Graduate Studies.  If one or more Creators receive equity directly from a licensee, the portion of equity to be received by the other Creators will be reduced in proportion to the contribution to the Invention or Work, as determined by OTD, made by the Creators who receive equity directly from a licensee.  A Creator who receives equity directly from a licensee may share in the distribution of Net Income

derived from non-equity fees and royalties paid by such licensee.  For example, this may arise when the Creator receives certain considerations directly from the licensee.  In such cases the University may determine that such Creator not receive some or any of the distribution of Net Income.  The OTD Director will make a recommendation in this regard to the Vice President for Research and Graduate Studies who shall make a determination in consultation with the relevant Dean.

### 10.6.3.6 Relationships Between Employees and the University Regarding Business Transactions

Florida Statutes declare it to be the policy of the State that no officer or employee of a state agency or other political subdivision of the State, shall have any interest, direct or indirect; engage in any business transaction or professional activity; or incur any obligation of any nature which is in substantial conflict with the proper discharge of his or her duties in the public interest. Conflict is defined as a situation in which regard for a private interest tends to lead to disregard of a public duty or interest.  Section 112.313, Florida Statutes, sets forth the specifically prohibited conduct, as well as the authority to obtain an exemption from the statutory prohibition against engaging in conduct, which creates a conflict of interest.

University employees are required to receive appropriate permission before soliciting business from the University by completing and submitting a Report of Outside Business or professional Activity (Appendix V) and a Report of Specified Interest (Appendix VI).

These forms must be submitted by an employee that has a financial and/or managerial interest in a business or a contractual relationship (for example, an employment or consulting agreement) with a business entity that is licensing or otherwise entering into a business relationship with the University or FAURC.  Disclosure and approval of the interest or relationship must be accomplished by requesting an exemption under Section 112.313(12) (h), Florida Statutes. Guidelines for submitting a request may be obtained by contacting the Vice President for Research and Graduate Studies. Further information on outside activities, financial interests, and conflict of interest law and policies is found in the FAU Faculty Handbook or may be obtained from FAU's Department of Human Resources or from OTD.

# 10.6.4 Procedures Regarding Inventions and Works
### 10.6.4.1 Organization and Authority

The Office of Technology Development (OTD) is responsible for all matters relating to patents, trademarks and copyrights as related to the identification, protection, and commercialization of Intellectual Property.

In order to have successful technology development, a team effort on the part of the Creator of the Intellectual Property, the staff of OTD, the administrative staff of the Creator's Center, Department/Division and College, and others involved in the Creator's research enterprise is necessary.  Many factors must come together to make technology development successful. There must be:

- appropriate Intellectual Property;
- an effort on the part of the Creator to assist in protecting and marketing the Intellectual Property;
- an effort on the part of OTD to protect, market, and license the Intellectual Property;

- a corporate licensee that is willing to invest the money, time, and effort to turn the Intellectual Property into a marketable product; and
- a market that is ready to buy the product when it has been fully developed and is ready to be sold.

Licensing specialists in OTD are the primary contacts for Creators with regard to the disclosure of Inventions and Works and during the subsequent stages of protection, marketing, licensing, and other activities.  OTD represents the University in the implementation of this Intellectual Property Policy with regard to governmental entities, industry, and the public.  Through the selective delegation of authority from the Vice President for Research and Graduate Studies to OTD, only OTD shall be authorized to commit available University funds for the expenses of licensing and patenting of Inventions or copyrighting of works on behalf of the University.

Technology development is facilitated through FAURC. At the sole discretion of the University, Works and Inventions in which the University asserts its interests may be assigned to FAURC. If a Work or Invention is assigned to FAURC, FAURC follows the same policy as the University in the distribution of proceeds.

### 10.6.4.2 Making Disclosures

University Personnel are required to disclose all Inventions to OTD.  Appendix VII contains an Invention Disclosure Form that should be used to disclose each invention.  Relevant manuscripts describing the Invention can be attached to the disclosure.  The disclosure should be signed and dated by Creator(s) and submitted to OTD for review for completeness.  If the disclosure is complete, a copy of the disclosure will be sent to the Creator(s)' Department/Division Chair and College Dean for comments.  In the event either the Department/Division Chair or College Dean does not approve the disclosure, OTD will return the disclosure to the Creator(s) as an incomplete disclosure.  If the disclosure is deemed incomplete, the "120 calendar days" referred to in Section 10.6.4.4 of this Policy for "complete disclosure" will not commence.  Timely disclosure prior to publication is required to prevent the loss of patent rights in countries outside the United States and the potential loss of patent rights in the United States.  Therefore, Creators may wish to send a preliminary copy of the original disclosure, prior to signing by the Chair and Dean, directly to OTD.  Disclosures should be made on Inventions even if the Creator is uncertain as to whether the Invention has commercial value.

University Personnel are required to disclose all University-Supported Works, excluding Traditional Works of Scholarship.  The procedures for disclosing Regular Instructional Works should be determined in discussions with the head of the Creator's Center or Department/Division.  All other University-Supported Works should be disclosed to OTD. Appendix VIII contains a Work Disclosure Form that can be used to disclose each Work. Relevant manuscripts describing the Work can be attached to the disclosure.  The disclosure should be signed and dated by Creator(s) and submitted to OTD for review for completeness. If the disclosure is complete, a copy of the disclosure will be sent to the Creator(s)'Department/Division Chair and College Dean for comments.    In the event either the Department/Division Chair or College Dean does not approve the disclosure, OTD will return the disclosure to the Creator(s) as an incomplete disclosure.  If the disclosure is deemed incomplete, the "60 calendar days" referred to in 10.6.4.4* of this Policy for "complete disclosure" will not commence.    Disclosures should be made on Works even if the creator is uncertain as to whether the Work has commercial value.

If a Creator believes that a given Invention or Work described in a disclosure is not the property of the University, the disclosure should indicate the reasons for this belief so the University can make an assessment.

**10.6.4.3 Disclosure Review**

OTD will conduct a review of the disclosure that shall include an assessment of its commercial importance and the extent to which the University should be involved in its protection, development, and promotion.  OTD shall recommend whether the University should assert or waive its interest, if any, in the Invention or University-Supported Work based on a determination of potential technical and market value.

OTD may employ outside evaluators and other consultants to review the disclosure, as well as to assist in the licensing, other commercialization, or protection of the Invention or Work. It shall be the obligation of the Creator to provide additional information as needed in all stages of this procedure.

**10.6.4.4 Determination of Ownership**

OTD will assess the respective equities of the Creator and the University in the Invention or Work and make a recommendation, consistent with the provisions of Section 10.6.3 of this policy, to the Vice President for Research and Graduate Studies as to the ownership interest of the University and the University's legal rights.  The Vice President for Research and Graduate Studies, or the Director of OTD, shall determine the ownership interest of the University by consulting, if needed, the Standing Advisory Committee.  The Director of OTD shall inform the Creator of the University's decision regarding ownership and the University's legal rights as soon as practicable, within 120 calendar days from receipt by OTD of the complete disclosure in
the case of an Invention and 60 days from receipt of the complete disclosure by OTD in the case of a University-Supported Work.  It shall be the obligation of the Creator to provide additional information as needed in all stages of this procedure.

If the University's ownership interest in an Invention or Work is waived to the Creator(s), it is the policy of the University that the Creator(s) must disclose the potential conflict of interest created by the ownership interest when proposing research to be conducted using University resources that could reasonably appear to influence the financial value of the Invention or Work. In such cases the University, through the Creator(s) and appropriate administrators, must establish the means to manage the conflict prior to conducting the research.

**10.6.4.5 Commercialization**

Inventions and Works in which the University has asserted its ownership interest, may be protected, marketed, and licensed as appropriate. The OTD licensing specialist with responsibility for a particular disclosure will play a primary role in taking appropriate action on such disclosure, in close collaboration with the Creator(s) and appropriate Centers, Departments/Divisions or Colleges at the University.  All final decisions with regard to Inventions and Works in which the University has asserted its ownership interest are made by the Vice President for Research and Graduate Studies or his/her designee. At any stage in the commercialization of an Invention or Work, OTD may elect to withdraw from further involvement in the protection or commercial application of the Invention or Work including withdrawing from financing or prosecuting patent applications.  At the request of the Creator in such case, OTD may transfer the intellectual property rights to the Creator.   The transfer shall not affect the right of the University and the State of Florida to royalty-free use of the Invention or Work.

# 10.6.5 Effective Date

This policy is effective as of August 16, 2001 and includes amendments made on December 18, 2001, and January 23, 2004, with the exception of those provisions concerning distribution of proceeds as set forth in Section 10.6.3.5 of this policy, which shall become effective as follows: The proceeds from any Works or Inventions that are the subject matter of any license agreement or other transaction entered into by the University or FAURC before August 16, 2001 shall continue to be distributed pursuant to the previous patent policy or any previous agreement entered into by the Creator and the University.  Section 10.6.3.5. of this policy will govern proceeds from any other Works or Inventions.

## Appendix I
**Section 1004.23, Florida Statutes**
**Universities; Powers; Patents, Copyrights, and Trademarks**

Any other law to the contrary notwithstanding, each university is authorized in its own name, to:

(1)  Perform all things necessary to secure letters of patent, copyrights, and trademarks on any work products and to enforce its rights therein. The university shall consider contributions by university personnel in the development of trademarks, copyrights, and patents and shall enter into written contracts with such personnel establishing the interests of the university and such personnel in each trademark, copyright or patent.

(2)  License, lease, assign, or otherwise give written consent to any person, firm, or corporation for the manufacture or use thereof, on a royalty basis or for such other consideration as the university shall deem proper.

(3)  Take any action necessary, including legal action, to protect the same against improper or unlawful use or infringement.

(4)  Enforce the collection of any sums due the university for the manufacture or use thereof by any other party.

(5)  Sell any of the same and execute all instruments necessary to consummate any such sale.

(6)  Do all other acts necessary and proper for the execution of powers and duties herein conferred upon the university.  Any proceeds there from shall be deposited and expended in accordance with s.240.241. Any action taken by the university in securing or exploiting such trademarks, copyrights, or patents shall, within 30 days, be reported in writing by the president to the Department of State.

## Section 112.313 (1-8), Florida Statutes
## Standards of Conduct for Public Officers, Employees of Agencies, and Local Government Attorneys

(1)  DEFINITION: As used in this section, unless the context otherwise requires, the term public officer includes any person elected or appointed to hold office in any agency, including any person serving on an advisory body.

(2)  SOLICITATION OR ACCEPTANCE OF GIFTS: No public officer, employee of an agency, local government attorney, or candidate for nomination or election shall solicit or accept anything of value to the recipient, including a gift, loan, reward, promise of future employment, favor, or service, based upon any understanding that the vote, official action, or judgment of the public officer, employee, local government attorney, or candidate would be influenced thereby.

(3) DOING BUSINESS WITH ONE'S AGENCY: No employee of an agency acting on his or her official capacity as a purchasing agent, or pubic officer acting in his or her official capacity, shall either directly or indirectly purchase, rent, or lease any realty, goods, or services for his or her own agency from any business entity of which the officer or employee or the officer's or employee's spouse or child is an officer, partner, director, or proprietor or in which such officer or employee of the officer's or employee's spouse or child, or any combination of them, has a material interest. Nor shall a public officer or employee, acting in a private capacity, rent, lease, or sell any realty, goods or services to the officer's or employee's own agency, if he or she is a state officer or employee, or to any political subdivision or any agency thereof, if he or she is serving as an offer or employee of that political subdivision. The foregoing shall not apply to district offices maintained by legislators when such offices are located in the legislator's place of business or when such offices are on property wholly or partially owned by the legislator. This subsection shall not affect or be construed to prohibit contracts entered into prior to:

(a)  October 1, 1975.

(b)  Qualification for elective office.

(c)  Appointment to public office.

(d)  Beginning public employment.

(4)  UNAUTHORIZED COMPENSATION.  No public officer, employee or an agency, or local government attorney or his or her spouse or minor child shall, at any time, accept any compensation, payment, or thing of value when such public officer, employee, or local government attorney knows, or, with the exercise of reasonable care, should know, that it was given to influence a vote or other action in which the officer, employee, or local government attorney was expected to participate in his or her official capacity.

(5)  SALARY AND EXPENSES: No public officer shall be prohibited from voting on a matter affecting  his or her salary, expenses, or other compensation as a public officer, as provided by law.  No local government attorney shall be prevented from considering any matter affecting his or her salary, expenses,  or other compensation as the local government attorney, as provided by law.

(6)  MISUSE OF PUBLIC POSITION: No public officer, employee of an agency, or local government attorney shall corruptly use or attempt to use his or her official position or any property or resource which may be within his or her trust, or perform his or her official duties, to secure a special privilege, benefit, or exemption for himself, herself, or others.  This section shall be construed to conflict with Section 104.31.

(7)  CONFLICTING EMPLOYMENT OF CONTRACTUAL RELATIONSHIP:
(a)  No public officer or employee of an agency shall have or hold any employment of contractual relationship with any business entity or any agency which is subject to the regulation of, or is doing business with, an agency of which he or she is an officer or employee, excluding those organizations and their officers who, when acting in their official capacity, enter into or negotiate a collective bargaining contract with the state or any municipality, county, or other political subdivision of the state; nor shall an officer or employee of an agency have or hold any employment or contractual relationship that will create a continuing or frequently recurring conflict between his or her private interests and the performance of his or her public duties or that would impede the full and faithful discharge of his or her public duties.

1.  When the agency referred to is that certain kind of special tax district created by general or special law and is limited specifically to constructing, maintaining, managing, and financing improvements in the land area over which the agency has jurisdiction, or when the agency has been organized pursuant to Chapter 298, then employment with, or entering into a contractual relationship with, such business entity by a public officer or employee of such agency shall not be prohibited by this subsection or be deemed a conflict per se.  However, conduct by such officer or employee that is prohibited by, or otherwise frustrates the intent of, this section shall be deemed a conflict of interest in violation of the standards of conduct set forth by this section.

2.  When the agency referred to is a legislative body and the regulatory power over the business entity resides in another agency, or when the regulatory power which the legislative body exercises over the business entity or agency is strictly through the enactment of laws or ordinances, then employment or a contractual relationship with such business entity by a public officer or employee of a legislative body shall not be prohibited by this subsection or be deemed a conflict.


(b) This subsection shall not prohibit a public officer or employee from practicing in a particular profession or occupation when such practice by persons holding such public office or employment is required or permitted by law or ordinance.

(8)  DISCLOSURE OR USE OF CERTAIN INFORMATION:
No public officer, employee of an agency, or local government attorney shall disclose or use information not available to members of the general public and gained by reason of his or her official position for his or her personal gain or benefit or for the personal gain or benefit of any other person or business entity.

## Appendix II
## Sections of US Copyright Law
(U.S. Code as of 02/08/2011)

Circular 92  (http://www.copyright.gov/title17/92chap1.html#106)

§ 106. Exclusive rights in copyrighted works
Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:

(1) to reproduce the copyrighted work in copies or phonorecords;

(2) to prepare derivative works based upon the copyrighted work;

(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;

(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and

(6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

### § 106A. Rights of certain authors to attribution and integrity

(a) RIGHTS OF ATTRIBUTION AND INTEGRITY. — Subject to section 107 and independent of the exclusive rights provided in section 106, the author of a work of visual art —

(1) shall have the right —

(A) to claim authorship of that work, and

(B) to prevent the use of his or her name as the author of any work of visual art which he or she did not create;

(2) shall have the right to prevent the use of his or her name as the author of the work of visual art in the event of a distortion, mutilation, or other modification of the work which would be prejudicial to his or her honor or reputation; and

(3) subject to the limitations set forth in section 113(d), shall have the right —

(A) to prevent any intentional distortion, mutilation, or other modification of that work which would be prejudicial to his or her honor or reputation, and any intentional distortion, mutilation, or modification of that work is a violation of that right, and

(B) to prevent any destruction of a work of recognized stature, and any intentional or grossly negligent destruction of that work is a violation of that right.

(b) SCOPE AND EXERCISE OF RIGHTS. — Only the author of a work of visual art has the rights conferred by subsection (a) in that work, whether or not the author is the copyright owner. The authors of a joint work of visual art are co-owners of the rights conferred by subsection (a) in that work.

(c) EXCEPTIONS. — (1) The modification of a work of visual art which is the result of the passage of time or the inherent nature of the materials is not a distortion, mutilation, or other modification described in subsection (a)(3)(A).

(2) The modification of a work of visual art which is the result of conservation, or of the public presentation, including lighting and placement, of the work is not a destruction, distortion, mutilation, or other modification described in subsection (a)(3) unless the modification is caused by gross negligence.

(3) The rights described in paragraphs (1) and (2) of subsection (a) shall not apply to any reproduction, depiction, portrayal, or other use of a work in, upon, or in any connection with any item described in subparagraph (A) or (B) of the definition of "work of visual art" in section 101, and any such reproduction, depiction, portrayal, or other use of a work is not a destruction, distortion, mutilation, or other modification described in paragraph (3) of subsection (a).

(d) DURATION OF RIGHTS. — (1) With respect to works of visual art created on or after the effective date set forth in section 610(a) of the Visual Artists Rights Act of 1990, the rights conferred by subsection (a) shall endure for a term consisting of the life of the author.

(2) With respect to works of visual art created before the effective date set forth in section 610(a) of the Visual Artists Rights Act of 1990, but title to which has not, as of such effective date, been transferred from the author, the rights conferred by subsection (a) shall be coextensive with, and shall expire at the same time as, the rights conferred by section 106.

(3) In the case of a joint work prepared by two or more authors, the rights conferred by subsection (a) shall endure for a term consisting of the life of the last surviving author.

(4) All terms of the rights conferred by subsection (a) run to the end of the calendar year in which they would otherwise expire.

(e) TRANSFER AND WAIVER. — (1) The rights conferred by subsection (a) may not be transferred, but those rights may be waived if the author expressly agrees to such waiver in a written instrument signed by the author. Such instrument shall specifically identify the work, and uses of that work, to which the waiver applies, and the waiver shall apply only to the work and uses so identified. In the case of a joint work prepared by two or more authors, a waiver of rights under this paragraph made by one such author waives such rights for all such authors.

(2) Ownership of the rights conferred by subsection (a) with respect to a work of visual art is distinct from ownership of any copy of that work, or of a copyright or any exclusive right under a

copyright in that work. Transfer of ownership of any copy of a work of visual art, or of a copyright or any exclusive right under a copyright, shall not constitute a waiver of the rights conferred by subsection (a). Except as may otherwise be agreed by the author in a written instrument signed by the author, a waiver of the rights conferred by subsection (a) with respect to a work of visual art shall not constitute a transfer of ownership of any copy of that work, or of ownership of a copyright or of any exclusive right under a copyright in that work.

## § 107. Limitations on exclusive rights: Fair use

Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include —

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work. The fact that a work is unpublished shall not itself bar a finding of fair use if such finding is made upon consideration of all the above factors.

**Appendix III**

# ARTICLE 18:  BOR/UFF Collective Bargaining Agreement
## INTELLECTUAL PROPERTY

18.1 Policy. Section 1004.23, Florida Statutes, authorizes the University to establish regulations and policies regarding intellectual property. To the extent such regulations or policies affect employee as defined in this collective bargaining agreement, they shall be consistent with the terms of this Collective Bargaining Agreement.

18.2 Definitions.

(a) Works. A Work is any copyrightable material that is fixed in any tangible medium such as printed material, computer software, code or databases, audio and visual material, circuit diagrams, architectural and engineering drawings, lectures, musical or dramatic compositions, choreographic works, pictorial works, graphic works, sculptural works, instructional works, traditional works of scholarship, or institutional works.

(1) Instructional Works are handbooks, syllabi, and study guides, whose primary use is related to an employee's instructional assignment.

(2) Traditional Works of Scholarship are Works such as scholarly publications, journal articles, research bulletins, monographs, textbooks, plays, poems, and works of art, whose primary use is evidence of professional activity including research and/or creativity.

(3) Institutional Works are specifically created at the direction of and for use by the University.

(b) Inventions. An Invention is a discovery, way of doing or making things, or any new and useful improvement thereof. An Invention includes but is not limited to a machine, method of manufacture, composition of matter, a device or process, a system, circuit, chemical compound, mixture, method of doing business, knowhow, design, model, or technological development. An Invention can also be a variety of plant, biological material, strain, culture of any organism, or portion, modification, translation, or extension of these items.

(1) Computer software and/or code, which can be either patented as an Invention or copyrighted as a Work, will be treated as an Invention for purposes of assignment of rights and ownership.

(2) Institutional Inventions are specifically created at the direction of and for use by the University.

(c) University Support includes funds, personnel, facilities, equipment, materials, or technological information provided by the University, and such support provided by other public or private organizations when it is arranged, administered, or controlled by or through the University or any University Direct Support Organization.

(d) Field of Employment is broadly defined to reflect the fact that employees often work outside their academic disciplines.

(e) A Creator is an employee as defined in this collective bargaining agreement who creates a Work or creates or discovers an Invention.
18.3 Disclosure.

(a) Inventions. Upon creation or discovery, and prior to public disclosure, a Creator shall provide full and complete written disclosure to the University Office of Technology Transfer of any (1) Invention in his/her field of employment; (2) Invention using University Support; or (3) Invention governed by the terms and conditions of a grant or contract administered by the University or a University Direct Support Organization. Within 120 days after the University's receipt of the Creator's written disclosure, the University shall provide the Creator notification if the University seeks an interest in the Invention.

(b) Works. Upon creation and prior to publication, a Creator shall provide full and complete written disclosure to the University Office of Technology Transfer of any Work made with University Support, Institutional Work, or Work governed by the terms and conditions of a grant or contract administered by the University or a University Direct Support Organization. Creators do not have to disclose Traditional Works of Scholarship or Instructional Works. Within sixty (60) days after the University's receipt of the Creator's written disclosure, the University shall provide the Creator notification whether the University seeks an interest in the Work.

(c) Employees shall assist the University in obtaining releases or assignments from persons with rights to Works or Inventions in which the University has an interest. Employees and the University shall not act to defeat the University's or the Employees' interests. 18.4 Ownership, Distribution of Proceeds and Assignment of Rights.

(a) Inventions. Inventions made within the Creator's Field of Employment, Institutional Inventions, or Inventions made with University Support are the property of the University. Inventions made outside the Creator's Field of Employment, non- Institutional Inventions, and inventions made without University Support are the property of the Creator.

(b) Works. Institutional Works or Works that express opinions for which the University is held responsible are the property of the University. Works created with University Support are the property of the University, unless they are Traditional Works of Scholarship or Instructional Works. Traditional Works of Scholarship and Instructional Works are the property of the Creator, but such works must be made available to, and maintained by the University for administrative purposes. The University shall compensate the employee for any costs incurred.

(c) Consistent with law and the legitimate interests of the University, Employees shall control their personal correspondence and notes. Employees shall serve as the University's agent for purposes of maintaining and controlling laboratory notebooks, raw data, and other working papers, all of which are the property of the University. Employees who leave the University shall be permitted to copy laboratory notebooks and take copies with them, although they may be required to maintain confidentiality of the data contained within the notebook when appropriate. The original notebooks will remain at the University.

(d) The University shall have a policy regarding the division of proceeds between Employees and the University for University owned Inventions and Works.

(e) The terms and conditions of a grant or contract administered by the University may supersede this Article with the written agreement of the affected initial Principal Investigator.

18.5 Release of Rights.

(a) Unless prohibited by law or contract, the University may withdraw from involvement in the protection or commercial application of an Invention or Work at any stage and relinquish its interests to a third party. If the University assigns its interests to a Creator, costs incurred by the University or on its behalf shall not be assessed against the Creator, unless otherwise agreed upon in writing by the Creator and the University.

(b) All assignments or releases of Inventions or Works by the University to employees shall contain a provision that such Invention or Work, if patented or copyrighted by the employee, shall be available royalty-free for educational or research purposes by the University, or consistent with law, by the United States Government or the State of Florida.

# ARTICLE 19:  BOR/UFF Collective Bargaining Agreement
## CONFLICT OF INTEREST/OUTSIDE ACTIVITY

19.1 Policy.

In all official acts, an employee is bound to observe the highest standards of ethics consistent with the code of ethics of the State of Florida (Chapter 112, Part III, Florida Statutes and related advisory opinions) and Board and University regulations. Nothing in this Article is intended to discourage an employee from engaging in outside activity in order to increase the employee's professional reputation, service to the community, or income, subject to the conditions stated herein.

19.2 Definitions.

(a) "Reportable Outside Activity" shall mean any compensated or uncompensated professional practice, consulting, teaching or research, which is not part of the employee's assigned duties and for which the University has provided no compensation.

(b) "Conflict of Interest" shall mean:

(1) any conflict between the private interests of the employee and the public interests of the University, the Board of Trustees, or the State of Florida, including conflicts of interest specified under Florida Statutes;

(2) any activity which interferes with the full performance of the employee's professional or institutional responsibilities or obligations; or

(3) any outside teaching employment with any other educational institution during a period in which the employee has an appointment with Florida Atlantic University, except with written approval of the Dean.

19.3 Conflicts of Interest Prohibited. Conflicts of interest are prohibited and employees are responsible for resolving them by working with their supervisors and other University officials.

19.4 Reportable Outside Activity.

An employee who proposes to engage in outside activity shall provide his or her supervisor a detailed written description of the proposed activity. The report shall include where applicable, the name of the employer or other recipient of services; the funding source; the location where such activity shall be performed; the nature and extent of the activity; and any intended use of University facilities, equipment, or services. A new report shall be submitted for outside activity previously reported at the beginning of each academic year for outside activity of a continuing nature and whenever there is a significant change in an activity (nature, extent, funding, etc.) The reporting provisions of this section shall not apply to activities performed wholly during a period in which the employee has no appointment with the University. Any outside activity which falls under the provisions of this Article and in which the employee is currently engaged but has not previously reported, shall be reported within sixty (60) days of the execution of this Agreement and shall conform to the provisions of this Article.

19.5 Expedited Grievance Procedure. In the event the proposed outside activity is determined to constitute a conflict of interest, and the employee disagrees with that determination, the employee may file a grievance under the expedited grievance procedure contained in Article 20, Section 20.15.

19.6 Use of University Resources. An employee engaging in any outside activity shall not use the facilities, equipment, or services of the University in connection with such outside activity without prior approval of the President or representative. Approval for the use of University facilities, equipment, or services may be conditioned upon reimbursement for the use thereof.

19.7 o University Affiliation. As specified in Article 5.3(d), an employee engaging in outside activity shall indicate that he/she is not an institutional representative unless specifically authorized as such. The employee will take reasonable precautions to ensure that the outside employer or other recipient of services understands that the employee is engaging in such outside activity as a private citizen and not as an employee, agent, or spokesperson of the University.

**FORMS:**

Appendix IV  Disclosure of Financial Conflict of Interest Status Form

Appendix V   Report of Outside Employment or Professional Activity Form

Appendix VI  Report of Specified Interest Form

Appendix VII  Invention Disclosure Form

Appendix VIII  Work Disclosure Form

POLICY APPROVAL

Policy Number: _____

*Initiating Authority*

Signature: _____   Date:  8-5-2013

Name: _____Barry T. Rosson, VP for Research_____