UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-81339-CIV-MIDDLEBROOKS

CHARLES A. NETTLEMAN, III,

    Plaintiff,

v.

THE FLORIDA ATLANTIC
UNIVERSITY BOARD OF TRUSTEES,

    Defendant.

_____/

## ORDER AND OPINION GRANTING DEFENDANT THE FLORIDA ATLANTIC UNIVERSITY BOARD OF TRUSTEES' MOTION TO DISMISS COMPLAINT

THIS CAUSE comes before the Court upon Defendant The Florida Atlantic University Board of Trustees' ("FAU") Motion to Dismiss Plaintiff's Amended Complaint ("Motion"), filed on September 22, 2016. (DE 20). Plaintiff Charles A. Nettleman, III ("Nettleman") filed a Response in Opposition on October 11, 2016 (DE 23), to which FAU replied on November 10, 2016 (DE 28). For the reasons stated below, FAU's Motion is granted.

### BACKGROUND

Nettleman is a land surveying engineer and professor of geomatics. (DE 9, Amended Complaint, hereinafter "Compl.," at ¶ 9). In 2008, he created a "package" of teaching materials (the "Materials"), which included "Powerpoint slides, laboratory exercises, homework assignments, lists of internet resources, quizzes, and exams." (*Id.* at ¶ 10). Nettleman registered the Materials with the United States Copyright Office under Copyright Reg. No. TX0007969504. (*Id.* at ¶ 12). These materials are used for the purpose of teaching "continuing education courses to land surveyors, engineers, and attorneys." (*Id.* at ¶ 11). In addition to using the Materials

himself, Nettleman licenses them to "various colleges and universities on a per-semester basis." (*Id.*).

FAU hired Nettleman in the summer of 2014 as an adjunct professor to teach a course called Fundamentals of Surveying for the Fall 2014 semester. (*Id.* at ¶ 13). To teach the course's curriculum, Nettleman used his Materials and made them available online by uploading them to Blackboard, FAU's "online learning-management system." (*Id.* at ¶ 14). Blackboard may be accessed "only by the professor-of-record, the enrolled students, FAU's internet technology support staff, and the program dean." (*Id.* at ¶ 15).

At some point thereafter, FAU offered Nettleman a position to teach the course again for the Spring 2015 semester. (*Id.* at ¶ 17). Nettleman declined because he had accepted a full-time position elsewhere. (*Id.*). In December 2014, Dr. Yan Yong ("Yong"), the Chair of and professor in FAU's Department of Civil, Environmental & Geomatics Engineering, requested that Nettleman permit the replacement surveying professor to use his Materials for the Spring 2015 semester. (*Id.* at ¶ 16). Nettleman denied the request because, as he informed Yong, he licensed his Materials to universities for a fee and could not allow FAU to use them free of charge. (*Id.* at ¶ 18). When Yong did not reply to his demurral, Nettleman assumed that the issue had concluded. (*Id.* at ¶ 19).

Later in 2015, Nettleman and FAU resumed their relationship. During the Fall 2015 semester, after the then-current surveying professor was deported, FAU asked, and Nettleman agreed, to take his place for the remainder of the semester. (*Id.* at ¶¶ 22-23). Once he became the professor-of-record for the course, Nettleman logged into Blackboard, only to discover that the outgoing surveying professor had been utilizing his Materials to teach the course curriculum for that semester. (*Id.* at ¶ 24). Investigating the matter further, Nettleman then learned through

Blackboard and Dropbox that "many of his Materials" were also used by the professor(s) who taught the course in the Spring and Summer 2015 semesters. (*Id.* at ¶¶ 25-26). At no point did Nettleman authorize FAU to make use of the Materials or receive any compensation for their use in the surveying course. (*Id.* at ¶ 28). Nettleman also notes that FAU has adopted its own intellectual property policy which "treats the faculty member as the copyright owner of works that are created independently and at the faculty member's own initiative for traditional academic purposes." (*Id.* at ¶ 31 & Ex. A at 3).

Nettleman filed a complaint against FAU on July 27, 2016. (DE 1). He amended the complaint once, on August 23, 2016. (DE 9). The Amended Complaint ("Complaint") asserts two statutory causes of action against FAU: (1) copyright infringement under 17 U.S.C. § 106, *et seq.* (Compl. at ¶¶ 41-53); and (2) alteration of copyright management information under 15 U.S.C. § 1202(a) (*id.* at ¶¶ 53-66). In addition, the Complaint alleges that by infringing on his copyrighted Material without due process of law, FAU violated Nettleman's constitutional rights emanating from the Fourteenth Amendment of the United States Constitution. (*Id.* at ¶¶ 67-81). FAU filed the instant Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (DE 20 at 1).

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *See* Fed. R. Civ. P. 12(b)(6). In assessing the legal sufficiency of a complaint's allegations, the Court is bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the complaint "must . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "Dismissal is therefore permitted when on the basis of a dispositive

issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (internal quotations omitted) (citing *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F. 2d 1171, 1174 (11th Cir. 1993)).

When reviewing a motion to dismiss, a court must construe plaintiff's complaint in the light most favorable to plaintiff and take the factual allegations stated therein as true. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). However, pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 678; *see also Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (stating that an unwarranted deduction of fact is not considered true for purpose of determining whether a claim is legally sufficient).

Generally, a plaintiff is not required to detail all the facts upon which he bases his claim. Fed. R. Civ. P. 8(a)(2). Rather, Rule 8(a)(2) requires a short and plain statement of the claim that fairly notifies the defendant of both the claim and the supporting grounds. *Twombly*, 550 U.S. at 555-56. However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 556 n.3. Plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citation omitted). "Factual allegations must be enough to raise [plaintiff's] right to relief above the speculative level, on the assumption that all of the allegations in the complaint are true." *Id.*

4

## DISCUSSION

The viability of Nettleman's Complaint turns on the resolution of an unsettled issue in the Eleventh Circuit: under what circumstances, if any, does the Copyright Remedies Clarification Act ("CRCA") abrogate the States' sovereign immunity, pursuant to Section 5 of the Fourteenth Amendment?

Sovereign immunity lies at the heart of the instant Motion because FAU argues, and Nettleman appears to concede in the Complaint, that FAU constitutes a state agency as "the governing body of a public university." (DE 20 at 4; Compl. at ¶ 3). Florida law defines a university board of trustees as a "state agenc[y] or subdivision[]" for purposes of delimiting the scope of sovereign immunity. Fla. Stat. § 768.28(2). Meanwhile, the Eleventh Amendment grants immunity from suit not just to states themselves, but also to "state agencies and entities that function as an arm of the state." *Ross v. Jefferson Cty. Dep't of Health*, 701 F.3d 655, 659 (11th Cir. 2012) (internal quotations omitted). There is no dispute that FAU is an "arm of the state" that would otherwise qualify for sovereign immunity. Were FAU immune from suit under the Eleventh Amendment, it would have to consent to be sued in order to come within the Court's jurisdiction – which it has not done.

Nonetheless, as both Parties recognize, Congress may, "in certain cases, . . . abrogate the States' sovereign immunity." *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990). Abrogation is permissible when two conditions are satisfied: (1) Congress "unequivocally expresse[s] its intent to abrogate the immunity; and (2) "Congress [acts] pursuant to a valid exercise of power." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55 (1996) (internal quotations omitted). With respect to the second prong, the Supreme Court has held that Congress cannot act pursuant to any of its Article I powers to expand the scope of the federal

courts' Article III jurisdiction. *Id.* at 72-73 ("The Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction."). In other words, insofar as a federal statute enacted pursuant to Article I purports to abrogate the States' sovereign immunity, it is void. Conversely, the Supreme Court affirmed in *Seminole Tribe* that the Fourteenth Amendment's Enforcement Clause (Section 5) provides a legitimate basis for abrogation. *Id.* at 59, 65-66 (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976)); U.S. CONST. amend. XIV, § 5 ("The Congress shall have power to enforce, by appropriate legislation, the provisions of this article."). That is because "the Fourteenth Amendment, adopted well after the adoption of the Eleventh Amendment and the ratification of the Constitution, operated to alter the pre-existing balance between state and federal power achieved by Article III and the Eleventh Amendment." *Id.* at 65-66.

Here, Nettleman's Complaint alleges that FAU violated both federal copyright statutes and the Fourteenth Amendment. Statutory liability as to state entities supposedly stems from CRCA, which expressly attempts to abrogate state sovereign immunity, thereby satisfying the first prong of the *Seminole Tribe* abrogation test. *Seminole Tribe*, 517 U.S. at 55. The Act provides, in relevant part:

> Any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity, shall not be immune, under the Eleventh Amendment of the Constitution of the United States or under any other doctrine of sovereign immunity, from suit in Federal court by any person, including any governmental or nongovernmental entity, for a violation of any of the exclusive rights of a copyright owner provided by sections 106 through 122, for importing copies of phonorecords in violation of section 602, or for any other violation under this title.

17 U.S.C. § 511(a). Congress reinforces this policy elsewhere, continuing:

> Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A(a), or who imports copies or phonorecords into the United States in

6

> violation of section 602, is an infringer of the copyright or right of the author, as the case may be. For purposes of this chapter (other than section 506), any reference to copyright shall be deemed to include the rights conferred by section 106A(a). As used in this subsection, the term "anyone" includes any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this title in the same manner and to the same extent as any nongovernmental entity.

*Id.* at § 501(a).

The more difficult question is whether Congress enacted CRCA "pursuant to a valid exercise of power." *Seminole Tribe*, 517 U.S. at 55. The Eleventh Circuit has already found that, in light of CRCA's legislative history, "Congress intended to abrogate state sovereign immunity under its Article I power." *Nat'l Ass'n of Boards of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1313 (11th Cir. 2011) (hereinafter "*NABP*"). Because the Supreme Court had previously rejected Article I's Copyright and Patent Clause as a valid ground to abrogate state sovereign immunity via the Patent Remedy Act, *see Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Savings Bank*, 527 U.S. 627 (1999), the Eleventh Circuit reasoned that "[i]t would be incongruous to hold that Congress may abrogate the State's sovereign immunity under" the same clause "for actions brought under CRCA." *NABP*, 633 F.3d at 1314-15. Thus, it held that the Copyright and Patent Clause could not support CRCA's exercise of abrogation authority. *Id.* at 1315.[1] At the same time, the language of *NABP* appeared to leave the door open for an embrace of Section 5 of the Fourteenth Amendment as a source of abrogation, given the right factual allegations. *Id.* at 1316-19 (restricting holding to

---

[1] FAU relies on this holding to argue that Nettleman's statutory claims must be dismissed. But that would only be true if Nettleman's claims rested exclusively on Article I. Because he also asserts a Fourteenth Amendment foundation, I must – as did the Court in *NABP* – assess the merits of that ground.

7

circumstances pled in complaint, *see infra*).[2] The upshot is that, with the Article I route foreclosed, the key to unlock abrogation – and consequently, Nettleman's statutory copyright claims – is the Fourteenth Amendment.

As discussed, Nettleman's Complaint pairs the statutory causes of action with a Due Process claim under the Fourteenth Amendment. To begin with, the enabling provisions of the Enforcement Clause encompass the power to effectuate the Due Process Clause through appropriate legislation. *City of Boerne v. Flores*, 521 U.S. 507, 519 (1997). That legislation can be geared towards remedying "actual violations" of the Fourteenth Amendment, *United States v. Georgia*, 546 U.S. 151, 151 (2006), or can prophylactically target "conduct not itself unconstitutional" if there is a "congruence and proportionality between the [unconstitutional] injury to be prevented or remedied and the means adopted to that end." *City of Boerne*, 521 U.S. at 518, 533. Nettleman accuses FAU of depriving him of a property interest without due process of law, and thus attempts to allege an "actual violation" under *Georgia*. *See NABP*, 633 F.3d at 1316 (analyzing nearly identical claim under "actual violation" framework); *see also* (DE 23 at 8-9, citing to *Georgia*).[3]

---

[2] This is in contrast to the Fifth Circuit, which has held CRCA to be, categorically, "an improper exercise of Congressional legislative power." *Chavez v. Arte Publico Press*, 204 F.3d 601, 607 (5th Cir. 2000) (suggesting that Congress would have needed, but did not have, a purpose to rely on the Fourteenth Amendment, but holding, in any event, that CRCA's breadth was not congruent and proportionate to the injury sought to be prevented).

[3] In its Reply, FAU cites to a footnote in *NABP*, which questions whether a "procedural due process claim actually falls under *Georgia*'s framework." *NABP*, 633 F.3d at 1316, n.32. The Eleventh Circuit declined to pursue this line of inquiry because it held that, even assuming *Georgia*'s application, the factual allegations in that case were insufficient. *Id.* FAU runs with the footnote's logic to offer a facial attack on *any* due process claim rooted in copyright infringement. (DE 28 at 3-4). This argument comes too late, as FAU did not brief it in its initial motion. The theory is therefore "deemed waived." *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009). I address only FAU's critiques of Nettleman's pleadings, which assume the theoretical possibility of the Fourteenth Amendment's Due Process Clause sustaining CRCA's abrogation of sovereign immunity.

In *NABP*, the Eleventh Circuit conceded that "a copyright is a property interest protected under the Due Process Clause." *NABP*, 633 F.3d at 1317. However, the court noted that the Due Process Clause does not guarantee that an individual be able to retain property, only that the property not be deprived "without due process of law." *Id.* at 1316-17 (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). Therefore, the issue before the Court was what process was due to the infringed-upon plaintiff. *Id.* at 1317. The court identified two options: either a pre- or post-deprivation hearing. *See id.* (discussing the conditions under which one or the other is due). The Eleventh Circuit held that a pre-deprivation hearing was unfeasible and not required where the complaint did not allege that the university defendant acted on an established state procedure that was "*designed* to deprive individuals of their copyrights." *Id.* at 1318 (citing *Rittenhouse v. DeKalb Cty.*, 764 F.2d 1451 (11th Cir. 1985)) (emphasis in original). Because the plaintiff there did not make the argument, the opinion did not evaluate whether the state failed to provide adequate post-deprivation remedies, *id.* at 1319, although it alluded to a "sufficien[cy]" standard for pleading such a claim, *id.*[4]

FAU argues that, just as in *NABP*, Nettleman failed to identify an established state procedure designed to deprive him of his copyrighted Material. That would obviate the need for a pre-deprivation hearing. Additionally, it contends, Nettleman did not sufficiently allege an absence of post-deprivation remedies. In particular, he did not address whether he could have filed a common law tort action against FAU. Nettleman responds that he posited multiple procedures that have the purpose of depriving him of his property interest. Moreover, he insists,

---

[4] In dicta, the Eleventh Circuit referenced the district court's finding that Georgia provided statutory, common law, and administrative remedies and observed further that the plaintiff had filed a state breach of contract action after the federal case was dismissed. *NABP*, 633 F.3d at 1319.

9

he need not address the availability of common law tort remedies at this stage – though even if such remedies were available, they would not provide an adequate post-deprivation hearing.

On the pre-deprivation front, I agree with FAU that Nettleman does not raise a single established state procedure evincing a design to strip him of a property interest. The Complaint avers generally that "FAU has enacted multiple procedures purposed to deprive Plaintiff of his property interest in his copyrights." (Compl. at ¶ 72). This phrasing is tailored to accommodate the demands of *NABP* but does not itself allege any particular procedure. Without more, it is merely a "formulaic recitation" of an element attached to a doctrinal test. *Twombly*, 550 U.S. at 545. That reference is, however, followed by three allegations that could arguably be construed as more specific procedures: (1) that FAU "intentionally and deliberately ignored Dr. Nettleman's response to FAU's inquiry about using his Materials, in order to use the Materials without detection by him and without having to compensate him" (*id.* at ¶ 73); (2) that it "intentionally and deliberately allowed other professors to access and disseminate the Materials via the Blackboard learning-management system, furthering the infringement" (*id.* at ¶ 74); and (3) that "[t]he limits placed on access to Blackboard – that is, that only professors and their students can see the materials posted thereon – are designed to prevent Plaintiff and similarly-situated other from becoming aware of the infringement" (*id.* at ¶ 75). However, each of these putative "procedures" is insufficient, under the standard set forth in *NABP* and the cases relied upon therein, to trigger FAU's obligation to provide Nettleman a pre-deprivation hearing.

The main problem with each of Nettleman's examples is that none of them are "established state procedures," as that term is contemplated in *NABP*. *See NABP*, 633 F.3d at 1317 (quoting *Hudson v. Palmer*, 468 U.S. 517, 532 (1984)) (explaining that pre-deprivation remedies are "impractical where a loss of property is occasioned by a random, unauthorized act

by a state employee, rather than by an established state procedure because" in those instances "the state cannot know when such deprivations will occur"). The concept of an "established state procedure" conditioning the pre-deprivation hearing requirement emerged in a series of Supreme Court opinions. *See Parratt v. Taylor*, 451 U.S. 527, 537-38 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436-37 (1982); *Hudson*, 468 U.S. at 531-34; *Zinermon*, 494 U.S. at 128-130. An established state procedure "refers to the mechanism that effects a deprivation or contributes to cause a deprivation." *Rittenhouse*, 764 F.2d at 1456, n.5; *see also Vinson v. Campbell Cty. Fiscal Court*, 820 F.2d 194, 199 (6th Cir. 1987). It is this mechanism that effectuates a "government policy." *NABP*, 633 F.3d at 1317. That policy can take the form of "formal rules, regulations, and statutes" enacted through a "deliberative, or even legislative, process." *Easter House v. Felder*, 910 F.2d 1387, 1403 (7th Cir. 1990). But the policy could also derive from a committee or sufficiently senior official's informal decisions made "on a case-by-case basis." *Id.* In either scenario, the policy underlying the procedure must be discrete, articulated, and generally-applicable. *See NABP*, 633 F.3d at 1318 ("The real issue is whether it is foreseeable that individuals – *individuals generally, as opposed to NABP specifically* – would be deprived of property interests when the state actors act pursuant to the established state procedure.") (emphasis added). What does not count as an established procedure is the absence of "better procedures [that] would have prevented the deprivation." *Rittenhouse*, 764 F.2d at 1456.

Although Nettleman characterizes FAU's acts and omissions as "procedures," there are no allegations that FAU officials were implementing a generalized government policy to appropriate copyrighted material. That FAU, specifically Yong, did not reply to Nettleman's message (Compl. at ¶ 73) shows only an individual failure of communication, not the operation

of an established procedure. In alleging that FAU allowed "other professors to access and disseminate the Materials" through Blackboard (*id.* at ¶ 74), Nettleman raises an injury that would foreseeably harm only him personally. Even if he means to imply that FAU permitted professors to use each other's works more broadly, he does not refer to any rule, regulation, statute, or informal decision that authorized such activity. Without this content, Nettleman's allegation is tantamount to an accusation of "administrative negligence" for FAU's failure to institute "better procedures" that might have blocked access to his Materials. *Rittenhouse*, 764 F.2d at 1456. The same is true of the limits on who can access Blackboard. (*Id.* at ¶ 75).[5] As a global matter, all three of these allegations are difficult to reconcile with Nettleman's own assertion that FAU "instituted a policy" to respect the copyrights of faculty members. (*Id.* at ¶¶ 29-40). The natural inference from the intellectual property policy is that any infringing activity would have been contrary to the governing rule and therefore "a random, unauthorized act." *NABP*, 633 at 1317.

Because Nettleman fails to allege that FAU relied on an established state procedure to deprive him of property, due process did not require a pre-deprivation hearing – so long as "a meaningful post[-]deprivation remedy for the loss is available." *Hudson*, 468 U.S. at 533. That means, contrary to Nettleman's contention, the Court must consider whether the Complaint adequately pleads an absence of post-deprivation remedies. *NABP*, 633 F.3d at 1319 (if pre-deprivation process not feasible, plaintiff "could only establish an actual due process violation if it sufficiently alleged that the State failed to provide adequate post-deprivation remedies").

---

[5] Indeed, it is unclear from the Complaint whether this feature stemmed from any decision on the part FAU or whether it is built-in to Blackboard. This particular allegation also fails because, at most, it alleges not that the limits were designed to *deprive* professors of control over their copyrights, but that they were designed to *conceal* any deprivation. *NABP*, 633 at 1318 (plaintiff "must identify an established state procedure which has as its *purpose* the deprivation of a protected interest) (emphasis in original).

I do not agree with Nettleman's reading of *Logan v. Zimmerman Brush Co.* that an independent tort action is necessarily inadequate when it is the only post-deprivation process available. *Logan* reiterated the general principal that a post-deprivation hearing of any kind is insufficient when, as was the case there, the plaintiff challenged an established state procedure. *Logan*, 455 U.S. at 436. The Supreme Court went on to say that, in those circumstances, a tort remedy was "particularly" unhelpful in making the plaintiff "entirely whole." *Id.* at 437. But that proposition does not hold in the reverse situation – when there is no established state procedure. If the deprivation was unpredictable and a pre-deprivation process thereby foreclosed, a state provides all the process due "by making available a tort remedy that could adequately redress the loss." *Zinermon*, 494 U.S. at 129.

Here, Nettleman asserts that "the State of Florida has no statutory scheme or claims-review procedure to address either copyright infringement or a federal civil rights claim, both of which are federal causes of action." (Compl. at ¶ 80). These allegations do not exhaust the menu of non-federal remedies. As FAU observes, Nettleman does not attend to the possibility that he could be made whole by filing a common law tort suit.[6] As a result, the Complaint does not sufficiently allege that Florida fails to provide adequate post-deprivation remedies.

It follows that Nettleman's pleading does not allege a due process violation that could be vindicated by the Fourteenth Amendment's Enforcement Clause. I must conclude, in turn, that Nettleman has not established a basis for CRCA to abrogate FAU's sovereign immunity in this instance.[7] Accordingly, it is

---

[6] Since neither party argues the point and the Complaint does not address it, I will not assess the merits of this question of Florida law.

[7] Dismissal is without prejudice for two reasons. First, in *NABP*, the Eleventh Circuit suggested the hypothetical possibility of factual allegations that might satisfy the *NABP* standard. *NABP*,

13

**ORDERED** and **ADJUDGED** that The Florida Atlantic University Board of Trustees' Motion to Dismiss Plaintiff's Amended Complaint (DE 20) is **GRANTED**. Plaintiff Charles A. Nettleman, III's Amended Complaint (DE 9) is **DISMISSED WITHOUT PREJUDICE**. The Clerk of Court shall **CLOSE THIS CASE** and **DENY** all pending motions **AS MOOT**.

**DONE AND ORDERED** in Chambers, at West Palm Beach, Florida, this 5 day of January, 2017.

_____
DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

cc:   All Counsel of Record

---

633 F.3d at 1316-19.  Second, this outcome allows Nettleman to avoid preclusion issues, should he pursue state law remedies.